## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| **MARLON BILLOPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-1254** |
| | ) | |
| **SUSAN PRENTICE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

# O R D E R

Pro se Plaintiff, Marlon Billops, filed suit pursuant to 42 U.S.C. § 1983 against Defendants Susan Prentice, Ryan Battle, Jason Dyer, Jeremy Whicker, Jeffrey Maley, Reginald Brewer, Alberardo Salinas, and Jeffrey Tangman, alleging violations of his constitutional rights and of Illinois state law. Defendants filed a Motion for Summary Judgment (Doc. 78) on January 13, 2025. Plaintiff filed a Response (Doc. 90) on May 22, 2025, to which Defendants filed a Reply (Doc. 91) on May 28, 2025.

For the following reasons, Defendants' Motion for Summary Judgment (Doc. 78) is GRANTED in part and DENIED in part, as described herein.

## BACKGROUND

The following background facts are taken from the undisputed material facts sections in Defendants' Motion (Doc. 78 at 4-17) and Plaintiff's Declarations (Doc. 90 at

8-9, 12, 15) outlining which facts are disputed.[1]  The proposed undisputed facts to which Plaintiff did not respond will be deemed admitted, pursuant to Local Rule 7.1(D)(2)(b)(6).[2]

To the extent any facts are in dispute, the Court has reviewed each party's position on those facts and consulted the record.  If a fact is incompatible with the record, the Court has stated the fact as it appears in the record.  If a fact is fairly in dispute even after reviewing the record, the Court has also provided the parties' positions on the disputed fact.

I.  The Parties

At all relevant times, Plaintiff was in the custody of the Illinois Department of Corrections ("IDOC") at Pontiac Correctional Center ("Pontiac") and Defendants were employed by the IDOC at Pontiac.

II.  August 4, 2016

---

[1] Central District Local Rule 7.1(D)(2)(b) directs the nonmoving party to respond to the movant's undisputed material facts in "separate subsections."  However, a pro se plaintiff may be "excused from full compliance with technical procedural rules provided there is substantial compliance."  *See Norfleet v. Walker*, 684 F.3d 688, 691 (7th Cir. 2012).  Here, the Court will consider Plaintiff to have been in substantial compliance when he has supported his claim that certain facts are disputed with evidentiary documentation, as required by Local Rule 7.1(D)(2)(b)(2), or when he disputes certain facts proposed by Defendants that are plainly not supported by the cited evidence.  *See, e.g.*, Doc. 78 at 7 ¶ 24, at 16 ¶ 115.

[2] A district court does not abuse its discretion by strictly enforcing local and procedural rules, even against a pro se litigant.  *Robinson v. Wexford Health Sources, et al.*, No. 22-1717, 2024 WL 676433, at *2 (7th Cir. Feb. 20, 2024) (unreported), citing *McCurry v. Kenco Logistics Services, LLC*, 924 F.3d 783, 737 n.2 (7th Cir. 2019).

On August 4, 2016, Plaintiff was assigned to a new cell due to his release from segregation. Plaintiff was on a hunger strike at that time. Defendant Battle was assigned to 5 Gallery of Pontiac's East Cell House. Plaintiff was reassigned to cell 519 in the East Cell House. Defendant Battle was escorting Plaintiff to cell 519. Plaintiff informed Defendant Battle that he would not be housed with a cellmate in 519 who was not also on hunger strike.

Plaintiff placed his property in the cell, but when Defendant Battle gave Plaintiff a direct order to go into the cell Plaintiff refused. Defendant Battle ordered Plaintiff to "cuff up," and Plaintiff refused.

Plaintiff threw multiple punches, hitting Defendant Battle in the face three or four times. Defendant Dyer had been able to observe Defendant Battle's escort of Plaintiff on 5 Gallery and responded first, after which non-parties Sgt. Gasper, Lt. Punke, and Officer Pitchford responded and observed Defendants Battle and Dyer struggling to get control of Plaintiff on the ground, who was continuing to resist. Lt. Punke and Officer Pitchford assisted in handcuffing Plaintiff.

Lt. Punke observed Defendant Battle heavily bleeding from the face. Punke took Plaintiff to the front area of 5 Gallery where a nurse decontaminated Plaintiff's eyes with saline solution, after which Plaintiff was taken to the North Segregation Unit and met with a Mental Health Professional ("MHP"). Plaintiff testified in his deposition in this matter that at the time he saw the MHP: "I'm not beat up, I'm not battered, I'm not bruised at this point, but I do need to see mental health."

Plaintiff was then placed on suicide watch, a decision made solely by MHPs at Pontiac.  Plaintiff alleges that Defendants Whicker, Maley, and Prentice escorted him to his new cell in North Segregation.

Plaintiff attests that Defendant Prentice stood in front of cell 101 while Defendants Whicker and Maley threw him to the floor of the cell.  Plaintiff further attests that Defendant Whicker slammed his face and head against the concrete floor while Defendant Maley punched his body.  Defendant Prentice attests that she did not witness any excessive force or unsanitary cell conditions on that date and was not notified of any such issues until she was informed of this lawsuit.

On August 4, 2016, at approximately 11:50 a.m., Defendant Dyer and nonparty officer Kelly Davidson issued Plaintiff disciplinary tickets for IDOC offense 101, violent assault of any person (staff).  Plaintiff attests that he was served a copy of the "investigation ticket" but was never served with any disciplinary tickets.

On September 5, 2016, at approximately 2:05 p.m. the Adjustment Committee held a hearing on Plaintiff's August 4 disciplinary tickets.  The Committee, comprised of members Defendants Brewer and Salinas, noted that there was a delay in the hearing because Plaintiff had been on suicide watch from August 8 to 22 and level 1 lockdown from August 22 through 30, 2016.  Plaintiff was Mirandized and elected not to provide a statement pertaining to the assault.  The Committee found Plaintiff guilty, noting in the basis for their decision that Plaintiff continued to strike Defendant Battle about the head and face until additional security staff arrived.  The Committee sentenced Plaintiff to 1

year C Grade, indeterminate segregation, revocation of GCC, 1 year commissary restriction, 1 year audio visual restriction, and 6 months contact visits restriction.

On May 3, 2024, Plaintiff pleaded guilty in the Livingston County Circuit Court to Aggravated Battery of Defendant Battle on August 4, 2016, a Class 3 felony under Illinois law.[3]  Plaintiff was sentenced to two years and six months in IDOC custody and six months of mandatory supervised release.

### III.  August 8, 2016

On August 8, 2016, at approximately 7:00 a.m., nonparty correctional officers Edwards and Tutoky were conducting a count on 2 Gallery in the North Cell House.  At that time, Edwards observed that Plaintiff's cell (cell 101) had both observation windows covered with feces and toilet paper.  Edwards gave Plaintiff three direct orders to uncover the windows and respond to the count.  Plaintiff refused, and Edwards notified Defendant Tangman.

Defendant Tangman arrived at cell 101 and observed the large observation windows smeared with feces and the small observation window covered with paper, not allowing visibility into the cell.  Defendant Tangman gave Plaintiff three direct orders to remove the covering and verbally respond to the count.  Plaintiff again refused all orders.

---

[3] The instant case was stayed from August 20, 2019, to May 14, 2024, due to the pending criminal charges against Plaintiff.

While Defendant Tangman was giving the third order, another inmate threw an unknown liquid smelling of feces and urine through the side of the door crack in cell 102 multiple times, striking Defendant Prentice and officers Edwards and Tutoky in the head, face, arms, legs, uniform, and pants.  Prentice, Edwards, and Tutoky wrote incident reports and were instructed to report to the HCU, fill out injury paperwork, call an 800-hotline number, take a shower, and put on new uniform shirts and pants. Defendant Prentice notified nonparty Major Cooper of the incident, and the extraction team was activated.

At approximately 8:20 a.m., the extraction team was activated to extract Plaintiff from cell 101.  Nonparty officer Wilson observed nonparty extraction team leader Frazier give Plaintiff, who was standing at the back of the cell, three direct orders to come to the cell door and cuff up.  Plaintiff refused.  One burst of pepper spray was issued by Frazier into the cell.  Frazier gave fourth and fifth direct orders for Plaintiff to come to the cell door, at which point Plaintiff complied with the fifth order and was put in restraints.

At approximately 8:30 a.m., Plaintiff was escorted outside of the front door of North House and seen by Nurse Williamson to flush Plaintiff's eyes.  At around 8:35 a.m., Williamson observed a one-and-a-half inch abrasion on Plaintiff's forehead that required no medical treatment beyond washing with saline.  Plaintiff reported no other injuries to Williamson.

After being searched, Plaintiff was seen in the North House holding tank by MHP Brady because Plaintiff stated he was having suicidal and homicidal thoughts.

Defendant Tangman and nonparties Edwards and Frazier each issued Plaintiff disciplinary tickets for the August 8, 2016, incident.

On September 5, 2016, at approximately 2:06 p.m. the Adjustment Committee, comprised of Defendants Brewer and Salinas, also held a hearing on Plaintiff's August 8 disciplinary tickets. The Committee noted that there was a delay in the hearing because Plaintiff had been on suicide watch from August 8 to 22 and level 1 lockdown from August 22 through 30, 2016.

Plaintiff pleaded guilty to the offenses, stating: "Yeah, I had windows covered. I took the tissue down; I didn't take the shit down. I didn't refuse to cuff up for the team, I couldn't understand them." The Adjustment Committee found Plaintiff guilty of impairment of surveillance and disobeying a direct order, for which Plaintiff received 6 months C Grade and 6 months segregation. The Committee based their decision on Plaintiff's admission of guilt and the incident report(s) substantiating the incident.

### III.  Remainder of August 2016

On August 8, 2016, following Plaintiff's extraction from cell 101, he was placed in a new cell (cell 102) at approximately 11:30 a.m. As a Major, Defendant Prentice did not personally inspect cell 102 and no one informed Prentice of any complaints from Plaintiff regarding unsanitary cell conditions. Further, Defendant Prentice was never personally involved in tasks such as personally inspecting cells, cleaning cells, or addressing maintenance issues. Correctional staff members are responsible for conducting cell inspections, and any issues discovered are to be addressed prior to an inmate's placement in the cell. If there were feces on the walls in any cell, that would

have been addressed by assigned correctional staff and would not have been brought to Defendant Prentice's attention unless it escalated to a significant issue.

Between August 8 and 29, 2016, Plaintiff was seen for daily suicide watch and no injuries due to feces on the wall were reported. Plaintiff asserts that the cell was already covered in feces and he asked for cleaning materials everyday through either August 16 or 17 but he did not receive any.

On August 15, 2016, Plaintiff was seen for daily suicide watch, and security staff reported that he was covering his cell window with his smock and refusing to come out of his cell to allow it to be cleaned, despite complaining of feces on the walls. On August 16, 2016, Plaintiff told his MHP that he was OK.

On August 17, 2016, Plaintiff was unresponsive under his blanket and had put tissues up on the walls. Plaintiff attests that he had begun covering the feces on the walls and doors of the cell with paper on that date.

Defendants Prentice, Tangman, and Whicker came to Plaintiff's cell to talk Plaintiff into taking down the tissues. When Plaintiff refused to do so, Defendants Tangman and Whicker entered his cell, without tactical gear and without asking Plaintiff to cuff up. Plaintiff alleges that Defendant Whicker ran into his cell with a shield and pushed Plaintiff to the back of the cell without reason, after which Plaintiff attests that Defendant Whicker punched him in the face and Defendant Tangman kneed him in the face. Plaintiff alleges that Defendants Whicker and Tangman handcuffed him after pulling him to the floor and bending his arm. Plaintiff further attests that

Defendant Whicker kicked him in the ribs. According to Plaintiff's Declaration, Defendant Prentice was standing just inside his cell.

After his extraction from the cell, Plaintiff was taken to healthcare for stitches to his lip. Plaintiff's Mental Health Progress Note from that date indicates that his lip was injured in the extraction. Plaintiff claims his ribs were broken but he never received an x-ray. X-rays of Plaintiff's head and forearm were conducted and showed no breaks. Plaintiff was treated with ibuprofen for complaints of an injured elbow and ribs.

Plaintiff testified that when he returned to cell 102 on August 17, the cell floor had been mopped but the feces were not cleaned off of the walls.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In making this determination, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the non-moving party does not extend to drawing inferences that are only supported by speculation or

conjecture.  See *Singer*, 593 F.3d at 533.  In addition, this court "need not accept as true [the non-moving party's] *characterization* of the facts or [their] legal conclusion." *Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F. Supp. 2d 815, 835 (C.D. Ill. 2010) (emphasis in original).

In order to successfully oppose a motion for summary judgment, the non-moving party must do more than raise a metaphysical doubt as to the material facts. *Michael v. St. Joseph Cty.*, 259 F.3d 842, 845 (7th Cir. 2001).  Instead, they "must present definite, competent evidence to rebut" the motion.  *Michael*, 259 F.3d at 845.  If the evidence on record could not lead a reasonable jury to find for the non-moving party, then no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997).

## ANALYSIS

### I.  Force and Failure to Intervene Claims

In the Merit Review Order (Doc. 12 at 5 ¶ 1), the Court held that Plaintiff could pursue Eighth Amendment excessive force and Illinois state law battery claims against Defendants Battle, Dyer, Whicker, Maley, and Tangman.  The Court held that Plaintiff could proceed on these claims based upon his allegations that: (1) Defendant Battle punched Plaintiff and placed him in a chokehold, Defendant Dyer sprayed him with mace, Defendant Whicker later slammed his face and hand onto the cell floor, and Defendant Maley punched him in the body, all on August 4, 2016; and (2) Defendant Tangman kneed him in the face and Defendant Whicker kicked him in the ribs and split

open his lip sometime after Plaintiff was moved to cell 102 on August 8, 2016.

Relatedly, the Court held that Plaintiff could proceed on an Eighth Amendment claim

that Defendant Prentice had failed to intervene to prevent the foregoing uses of force.

    A. *August 4, 2016*

    In their Motion for Summary Judgment, Defendants argue that Plaintiff's force

claims on August 4, 2016, are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

    *Heck* bars any claim under § 1983 that is inconsistent with or would implicitly

question the validity of a criminal conviction or the duration of a sentence. *Muhammad*

*v. Close*, 540 U.S. 749, 751 (2004); *Wiley v. City of Chicago*, 361 F.3d 994, 996 (7th Cir. 2004).

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the application of

*Heck* to circumstances in which a prisoner plaintiff's good time credits were also

implicated. *Muhammad*, 540 U.S. at 751.

    It is plain from the record at summary judgment that Plaintiff's force claim

against Defendant Battle is barred by *Heck*. Plaintiff was convicted of aggravated

battery of Defendant Battle for the events of August 4, 2016, and sentenced to 2.5 years

by the Livingston County Circuit Court. In addition, Plaintiff was found guilty by the

Adjustment Committee of assaulting Defendant Battle, for which he lost good time

credit. Either of these convictions—criminal or disciplinary—would be sufficient to bar

Plaintiff's claim under *Heck*.

    Further, although Plaintiff now claims in response to Defendants' summary

judgment motion that Defendant Battle punched Plaintiff on the side of his face and

placed him in a chokehold before Plaintiff punched Battle, that allegation is also

inconsistent with the established record. Specifically, Plaintiff's himself testified during his deposition in this case that at the time he saw the nurse and MHP following his interaction with Defendant Battle on August 4, 2016: "I'm not beat up, I'm not battered, I'm not bruised at this point, but I do need to see mental health." In short, even if Plaintiff's claims against Battle were not *Heck*-barred, no reasonable jury could conclude that Plaintiff was acting in self-defense against Defendant Battle.

For these reasons, Defendant Battle is entitled to summary judgment in his favor.

The Court next turns to Plaintiff's claim that Defendant Dyer sprayed him with mace during Plaintiff's interaction with Defendant Battle on August 4. To succeed on his excessive force claim, Plaintiff must show that the force used by Defendant Dyer was applied maliciously and sadistically, not in a good faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Plaintiff cannot do so.

When using force, prison officials must take into account "the very real threats th[at] unrest presents to inmates and prison officials" while also considering "the possible harms to inmates against whom force might be used." *Id.* at 320. "Despite the weight of these competing concerns, corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Hudson v. McMillian*, 503 U.S. 1, 6 (1992), *quoting Whitley*, 475 U.S. at 320; *see also Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) (an "error of

judgment" identified only in retrospect "does not convert a prison security measure into a constitutional violation").

"The use of mace violates the Eighth Amendment only if it is used 'in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain.'" *Musgrove v. Detella*, 74 F. App'x 641, 645 (7th Cir. 2003), *quoting Soto v. Dickey*, 744 F.2d 1260, 1270-71 (7th Cir. 1984).

The undisputed facts establish that Defendant Dyer sprayed Plaintiff with mace only after Defendant Dyer witnessed Plaintiff punch Defendant Battle. Plaintiff was then promptly taken to a nurse, who rinsed his eyes. The evidence in the record therefore supports the conclusion that Defendant Dyer's use of mace against Plaintiff was done in a good faith effort to restore discipline and did not constitute excessive force. *See Whitley*, 475 U.S. at 320-21.

For these reasons, Defendant Dyer is also entitled to summary judgment in his favor.

Plaintiff also alleges that Defendant Whicker slammed his face and hand onto the floor, and that Defendant Maley punched him on August 4, 2016. Defendants argue that they are entitled to summary judgment under *Heck*, due to Plaintiff's conviction discussed above. In response, Plaintiff cites to *Gilbert v. Cook*, 512 F.3d 899 (7th Cir. 2008), for the proposition that he may still litigate the use of force during a subsequent event that is distinct from the *Heck*-barred conduct. Defendants admit in their reply

that the Seventh Circuit held in *Gilbert* that the reasonableness of a second or subsequent use of force could be litigated.

Defendants do not, however, provide any plausible argument that the alleged force used by Defendants Whicker and Maley on August 4, 2016, was part of the same events that may not be relitigated due to *Heck*. The undisputed record establishes that after Plaintiff punched Defendant Battle and was sprayed with mace by Defendant Dyer he was then restrained and taken to be evaluated by a nurse and MHP. Plaintiff plainly alleges that it was only after he was removed from the holding tank and escorted to a new cell by Defendants Whicker, Maley, and Prentice that Defendants Whicker and Maley threw him to the cell floor, where Defendant Whicker allegedly slammed his face and head into the concrete and Defendant Maley punched his body.

Under *Gilbert*, Plaintiff may plainly litigate his August 4, 2016, excessive force and battery claims against Defendants Whicker and Maley without running afoul of *Heck*. These Defendants do not deny using force against Plaintiff on this date, and they make no other arguments that the alleged use of force was not excessive or otherwise in violation of the Eighth Amendment or Illinois state law.[4] *See Johnson v. Cambridge*

---

[4] Even if Defendants had made such arguments, "summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010).

*Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) ("[S]ummary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." (internal quotations omitted)).

In short, Defendants Whicker and Maley have entirely, and wrongly, relied upon *Heck* in moving for summary judgment as to Plaintiff's claim that they used excessive force against him in a separate instance on August 4, 2016. Defendants Whicker and Maley are not entitled to summary judgment.

For these same reasons, Defendant Prentice is not entitled to summary judgment in her favor on Plaintiff's claim that she failed to intervene during Defendants Whicker and Maley's alleged use of force against Plaintiff on August 4. Although Defendant Prentice attests at summary judgment that she "does not recall witnessing" Defendants using excessive force against Plaintiff at any time, Plaintiff has attested that Defendant Prentice was present during the escort by Defendants Whicker and Maley and stood in front of the cell while they threw him in, slammed him to the floor, and punched him.

As such, there is clearly a material dispute of fact requiring a trial as to Plaintiff's claim that Defendant Prentice witnessed the excessive use of force by Defendants Whicker and Maley on August 4, 2016, and had the opportunity to intervene but failed to do so. *See Waldridge*, 24 F.3d at 920.

*B. August 8 and 17, 2016*

Defendants argue that Plaintiff has no evidence that Defendants used excessive force or committed battery on August 8 or 17, 2016, that any force claims arising from

August 8, 2016, are barred by *Heck*, and that the Court's Merit Review did not allow

Plaintiff to proceed with any claims arising on August 17, 2016.

Returning to the Court's Merit Review, the Court summarized the relevant post-

August 4, 2016, allegations in the Complaint as follows:

> On August 8, 2016, Plaintiff was taken to Defendant Nurse Williamson.[5]  Plaintiff told Defendant that his jaw was broken but she provided no treatment.  Plaintiff was then taken to cell number 102, allegedly at Defendant Prentice's direction, where he was placed on suicide watch.  Plaintiff alleges the cell had feces on the walls and door.  He apparently made requests to unidentified individuals that the cell be cleaned, or that he be moved, without success.  Plaintiff claims that he was only wearing a prison smock but somehow found wax paper which he used along with toilet tissue, to cover the feces.  Plaintiff alleges that Lt. Tangman, not a party,[6] ran into his cell and kneed him in the face.  He claims that Defendant Whicker responded, kicking him in the ribs as he lay on the floor.  Defendant Whicker also "uppercut" Plaintiff, splitting his lip, while Defendant Prentice watched.

Doc. 12, at 2-3.

At summary judgment, the record shows that on August 8, 2016, Plaintiff was

extracted from cell 101 by nonparty team leader Frazier, which involved Frazier's use of

one burst of pepper spray before Plaintiff complied and was put in restraints.  Plaintiff's

eyes were treated for pepper spray exposure and the nurse noted an abrasion to his

forehead that did not require treatment.  Defendant Tangman was apparently present at

---

[5] Nurse Williamson was dismissed as Defendant on August 20, 2019.

[6] Lt. Tangman has since been added as a party and remains a Defendant in this case.

or around the time of the extraction on August 8, 2016,[7] but there is no allegation that Defendant Tangman or any other Defendants used force on that date. Therefore, Plaintiff is not proceeding on any claims arising from August 8, 2016.

Defendants' argument that Plaintiff's allegations at summary judgment depart from the timeline alleged in his Complaint and summarized in the Court's Merit Review is not well-taken. The material facts regarding the events of August 17, 2016, do align with the Court's summary of Plaintiff's allegations against Defendants Tangman and Whicker in the Merit Review.

In the Merit Review, the Court held that Plaintiff could proceed on claims against Defendant Tangman for kneeing him in the face and against Defendant Whicker for kicking him in the ribs and splitting open his lip at some point after he was moved to cell 102 on August 8, 2016. At summary judgment, the undisputed facts establish that Plaintiff was moved to cell 102 on August 8 and remained there through at least August 17, 2016. Defendants Whicker, Tangman, and Prentice came to Plaintiff's cell (cell 102) on August 17, during which the parties agree that Defendants Whicker and Tangman entered the cell. Plaintiff alleges that Defendant Whicker hit him in the face and kicked him in the ribs and that Defendant Tangman kneed him in the face, while Defendant Prentice was standing just inside his cell. The undisputed record also establishes that

---

[7] The record reflects that Defendant Tangman and other nonparties issued disciplinary tickets to Plaintiff. However, Plaintiff did not lose any good time credit as a result and therefore *Heck* is not implicated.

Plaintiff's lip was injured in the extraction, for which he received stitches, and that he complained of injured elbow and ribs and received x-rays of his head and arm(s).

In short, Defendants do not make a plausible argument that they did not receive "fair notice" of Plaintiff's claim that Defendants Whicker and Tangman used excessive force against him when they extracted him from cell 102, even if the Court's Merit Review was not clear on the exact date in August 2016 that allegedly occurred. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007).

And the alleged events of August 17, 2016, fall squarely within the instances in which "summary judgment is…inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." *Cyrus*, 624 F.3d at 862.

Therefore, Defendants Whicker and Tangman are not entitled to summary judgment in their favor on Plaintiff's force claims against them arising from the August 17 extraction.

And as with the allegations regarding August 4, 2016, Defendant Prentice is not entitled to summary judgment in her favor on Plaintiff's claim that she failed to intervene on August 17. Although Defendant Prentice attests at summary judgment that she "does not recall witnessing" Defendants using excessive force against Plaintiff at any time, Plaintiff has attested that Defendant Prentice was present just inside the cell during the extraction by Defendants Whicker and Tangman. As such, there is clearly a material dispute of fact requiring a trial as to Plaintiff's claim that Defendant Prentice witnessed the excessive use of force by Defendants Whicker and Tangman on August

17, 2016, and had the opportunity to intervene but failed to do so.  *See Waldridge*, 24 F.3d at 920.

### II.  Conditions of Confinement

The Court also held that Plaintiff could proceed on Eighth Amendment conditions of confinement claims against Defendant Prentice.  A prisoner challenging conditions of confinement must first show that the conditions were objectively sufficiently serious, i.e., that he was denied "the minimal civilized measures of life's necessities" and faced an "excessive risk to [their] health and safety."  *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (internal quotations omitted).  Second, a plaintiff must prove that the defendant acted with deliberate indifference to the condition, i.e., that the defendant had subjective knowledge of the excessive risk of harm and yet disregarded it.  *Id.* at 720.

In their Motion, Defendants argue that Defendant Prentice is entitled to summary judgment on the conditions claim because the conditions were not sufficiently objectively serious and because Defendant Prentice did not act with a sufficiently culpable state of mind.

Turning first to the severity of the conditions themselves, Plaintiff alleges that cell 102 was covered in feces when he was placed there on August 8, 2016.[8]  Based upon

---

[8] It is unclear whether Plaintiff also suggests that there were feces present in cell 101.  However, based upon the record at summary judgment Plaintiff has not alleged that feces were present in cell 101 when he was placed into that cell by any Defendants.  The record suggests that if feces were present in cell 101 Plaintiff created those conditions himself.

established Supreme Court and Seventh Circuit precedent, an allegation of a feces-covered cell is sufficient to fulfill the objective prong of a conditions claim at summary judgment. *See, e.g., Taylor v. Riojas*, 592 U.S. 7, 9 (2020); *Vinning-El v. Long*, 482 F.3d 923, 924, (7th Cir. 2007) (collecting cases).

However, the record does not support Plaintiff's allegation that Defendant Prentice had subjective knowledge of his placement in a cell with those conditions. The parties agree that Defendant Prentice was one of a group of correctional staff members who was hit by feces and/or urine thrown by another inmate from cell 102 on August 8, 2016. Plaintiff alleges that Defendant Prentice therefore must have known that the cell contained feces when Plaintiff was reassigned to cell 102 later that same day. But the record also establishes that after being hit with these bodily fluids Defendant Prentice reported the incident to nonparty Major Cooper, who activated the extraction team to remove Plaintiff from cell 101 while Defendant Prentice reported to the HCU, filled out injury paperwork, called a hotline number, took a shower, and put on a new uniform.

The undisputed material facts establish that Defendant Prentice did not personally inspect cell 102 and no one informed her of any complaints from Plaintiff regarding unsanitary cell conditions. More generally, Defendant Prentice was never personally involved in tasks such as personally inspecting cells, cleaning cells, or addressing maintenance issues. And in this case, there is no suggestion whatsoever that Defendant Prentice was involved in assigning Plaintiff to cell 102 or placing him in that cell while she was dealing with the aftermath of being personally struck with another inmate's excrement.

Defendant Prentice is therefore entitled to summary judgment in her favor on Plaintiff's conditions of confinement claim.

### III.  Due Process

Finally, the Court held that Plaintiff could proceed on a procedural due process claim against Defendants Brewer and Aberardo because Plaintiff alleged that he was not served with disciplinary tickets or given an opportunity to identify witnesses.  As summarized above, Defendants Brewer and Aberardo formed the Adjustment Committee that found Plaintiff guilty on September 5, 2016, of disciplinary violations that occurred on both August 4 and 8, 2016.

To succeed on a procedural due process claim, a prisoner "must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient."  *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007).

In their Motion, Defendants argue that they are entitled to summary judgment on this claim because (1) the Administrative Review Board affirmed both decisions,[9] (2) Plaintiff received copies of his disciplinary reports, (3) Plaintiff had the opportunity to

---

[9] Defendants have not supported their argument that a subsequent ARB review of a disciplinary conviction forecloses a due process violation, citing only to *Murdock v. Walker*, 2014 WL 916992 (N.D. Ill. Mar. 10, 2014), an irrelevant and unreported District Court opinion regarding a parolee's host site determination.  Further, Defendants have failed to support their contention that the ARB reviewed any relevant grievance(s) about Plaintiff's discipline with documentary evidence.  Defendants cite to "Exhibit 11," but no such exhibit was filed.

call witnesses but simply did not do so, and (4) any delay in the Adjustment Committee proceedings was due to suicide watch and lockdown.

Defendants make no argument that Plaintiff's liberty interests were not implicated by the discipline imposed. Among other consequences, Plaintiff lost good time credit and was sentenced to indeterminate segregation for the August 4, 2016, disciplinary infraction. Good time credits constitute a constitutionally-protected liberty interest. *Figgs v. Dawson*, 829 F.3d 895, 906 (7th Cir. 2016). So too, protracted time in segregation may implicate a liberty interest. *Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015). As for the August 8, 2016, disciplinary infraction, Plaintiff was sentenced to six months in segregation, but a six-month duration of segregation alone is insufficient to rise to the level of a Fourteenth Amendment violation. *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013).

Therefore, at least for the discipline imposed for the August 4 staff assault charge Plaintiff was entitled to the minimum due process requirements under *Wolff v. McDonnell*, 418 U.S. 539, 571 (1974). *Westefer v. Neal*, 682 F.3d 679, 686 (7th Cir. 2012); *Chavis v. Rowe*, 643 F.3d 1281, 1285 n.3 (7th Cir. 1981). Under *Wolff*,

> Due process requires that prisoners in disciplinary proceedings be given: "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action."

*Scrugg*, 485 F.3d at 939, *quoting Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992).

Defendants assert that Plaintiff received copies of his disciplinary reports and had the opportunity to call witnesses, but they have pointed to no evidence in the record that would support such a conclusion.

Defendants have not filed as exhibits any copies of disciplinary reports that were served on Plaintiff.  In this Court's experience with pro se prisoner litigation, an IDOC disciplinary reports or "ticket" contains the date and time that the ticket was served on a prisoner, with the signature of the correctional officer who served the ticket and either the signature of the prisoner or a notation that the prisoner refused to sign.  The disciplinary ticket would provide advance notice of the claimed violations and an opportunity to list requested witnesses.

Here, Plaintiff attests that he was never served, and Defendants have not provided any evidence to the contrary.  Again, "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."  *Johnson*, 325 F.3d at 901. Defendants have not done so, and the issue of whether Plaintiff was provided with notice and an opportunity to call witnesses is therefore a material fact in dispute.  The Court cannot resolve such a dispute at summary judgment.  Therefore, Defendants are not entitled to judgment in their favor on Plaintiff's due process claim.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion for Summary Judgment [78] is GRANTED as to Plaintiff's force claims against Defendants Battle and Dyer and conditions of confinement claim against Defendant Prentice.  Defendants' Motion is DENIED as to Plaintiff's force

claims against Defendants Whicker, Maley, and Tangman; failure to intervene claim against Defendant Prentice; and due process claim against Defendants Brewer and Aberardo.

(2) This case will be set for a final pretrial conference and trial date by separate Order.

ENTERED this 20th day of August, 2025.

s/Michael M. Mihm
MICHAEL M. MIHM
U.S. DISTRICT JUDGE